Stoddard *et al. v.* Johnson, Treasurer, *et al.*

No. 9524.

## STODDARD ET AL. *v.* JOHNSON, TREASURER, ET AL.

PLEADING.—*Practice.—Argumentative Denial.—Demurrer.*—An argumentative denial, deduced from facts well pleaded, is equivalent to a special denial of the inconsistent averments of the complaint, and may be good on demurrer.

ESTOPPEL IN PAIS.—As a rule, there can be no estoppel by conduct, short of a binding contract, where the facts out of which the estoppel is claimed to arise are known to all the parties.

GRAVEL ROAD.—*Assessments.—Injunction.—Statute Construed.*—Section 12 of the act of March 3d, 1877, in relation to the construction of gravel roads, Acts 1877, Reg. Sess., p. 82, confers authority upon the circuit court to enjoin or declare void an assessment ordered by the county commissioners, only in actions brought by a single individual or by individuals having a single interest, for the purpose of enjoining or declaring void the assessment made against his or their land, and wherein a judgment could be rendered without affecting the rights or liabilities of other parties in interest, and does not apply to an action by numerous parties, in which it is sought to enjoin the collection of assessments made upon their lands for the construction of a gravel road.

SAME.—*Error in Proceedings.—Intention of Legislature.*—Under the provisions of said section, it was intended by the Legislature that errors and defects in the proceedings, which did not directly and injuriously affect the rights of the complainant, should not be deemed cause for assailing such proceedings.

JURISDICTION.—*Judgments of Inferior Courts.—Presumptions.— Collateral Attack.*—When the jurisdiction of an inferior tribunal is once established over the subject-matter of, and the parties to, a proceeding which may be had before it, the same presumptions are indulged in favor of the regularity of its action as prevail in favor of the action of courts of general powers, and its judgments are unassailable by collateral attack.

SAME.—Where an inferior tribunal is required to ascertain and decide upon facts essential to its jurisdiction, its determination is conclusive as against collateral attack.

FREE GRAVEL ROAD.—*Construction of.— County Commissioners.— Finding of Jurisdictional Facts.—Presumptions.—Record.—Judgment.—Collateral Attack.*—The filing or presentation of a petition to the board of county commissioners for the construction of a free gravel road, under the act of March 3d, 1877, *supra,* calls into exercise the jurisdiction of such board, and authorizes it to determine, not only whether the petition is properly signed by the requisite number of land-owners, but every other fact necessary to the granting of the prayer of the petition, whether the proposed improvement, its kind, and the points between which it was to be made, and the like, were sufficiently stated; and it is not necessary

Stoddard *et al. v.* Johnson, Treasurer, *et al.*

that the record of the board shall show an express finding upon such facts, as such finding will be presumed in support of the proceedings, if the record shows an order granting the petition, or for the taking of the steps necessary to the accomplishment of the end designed; and herein, the order for the appointment of the viewers and engineer, and fixing the time and place of their meeting, is equivalent to a finding of the facts necessary to be found, and to an adjudication of the board, that the petition itself is sufficient, which adjudication can not be collaterally attacked.

SAME.—*Petition May Include Line of Road with Branches.*—The act of 1877, *supra,* does not authorize the including of more than one improvement in a single petition, but does not forbid a petition for an improvement, whether it be a single continuous line, or a line with branches, so long as all the parts are connected.

SAME.—*Description of Improvement.—Specifications.*—Where, under said act, the petition states that it is for a gravel road, that is a sufficient description of the kind of improvement prayed for, no other specification being required until the board of commissioners comes to order the improvement made.

SAME.— *Statute Construed.—When Jurisdiction of County Commissioners Not Lost.*—The viewers and engineer appointed by a board of commissioners, upon a petition for the construction of a free gravel road, under the act of March 3d, 1877, *supra,* made report at the next regular session after their appointment, but the schedule of lands reported benefited was not spread of record therewith, and, the record reciting that the petition was not then signed by the requisite number of landholders, the matter was continued. No record of any steps taken in relation thereto at the next regular session was shown, but, at a special session following, the viewers and engineer again made report, which, with the schedule of lands benefited, was spread of record, no one objecting; and, upon proof being made that the petition had been signed by the requisite number of landholders, the board ordered the work.

*Held,* that the provisions of section 12 of said act were sufficient to prevent a loss of the jurisdiction of the board of commissioners by its failure to act upon the report or enter a continuance thereof at its regular session.

From the Montgomery Circuit Court.

*G. W. Paul* and *J. E. Humphries,* for appellants.

*G. D. Hurley, B. Crane, P. S. Kennedy* and *W. T. Brush,* for appellees.

WOODS, J.—Action by the appellants against the appellees, as the treasurer, auditor and board of commissioners of

Montgomery county, to enjoin the collection of certain assessments made upon lands of the appellants for the construction of a free gravel road under the act of March 3d, 1877. Acts 1877, Reg. Sess., p. 82.

The court having overruled their demurrer to the answer, the appellants chose to abide by their exception to the ruling, and refused to reply. Judgment was given accordingly for the defendants. The complaint and answer are of great length, and loaded down with exhibits needlessly repeated, consisting of alleged copies of the record of the proceedings of the board of commissioners, reports of viewers, and other papers, copied at full length into the pleadings. Numerous defects and irregularities are alleged in the complaint, for which it is claimed that the procedure which resulted in the alleged assessments, and the assessments themselves, must be held void. The answer sets out the record and papers of the proceedings had before the board with greater fulness than the complaint, and shows argumentatively that many, and perhaps the more serious, defects alleged in the complaint do not exist. For instance, the complaint charges that certain important steps in the proceedings were had at special sessions of the board of county commissioners, which sessions were illegal because not convened in any of the modes prescribed by law, and that the bond, and the publications of notice, required by the second, fifth and sixth sections of the law, were not made. The answer, however, shows that these requirements of the statute were complied with. The demurrer admits the truth of the answer, and, notwithstanding the facts stated might have been proved under a general denial if one had been pleaded, the answer is good, if, admitting its truth, there does not remain undenied or uncontradicted enough of the complaint to constitute a cause of action. An argumentative denial, deduced from facts well pleaded, is equivalent to a special denial of the inconsistent averments of the complaint, and will be good

on demurrer, if it goes far enough. *Judah* v. *The Trustees of Vincennes University*, 23 Ind. 272 ; *Loeb* v. *Weis*, 64 Ind. 285 ; *Burns* v. *Stanley*, 72 Ind. 350.

The answer also contains averments on which it is claimed that the appellants are estopped from contesting the assessments, namely, that they stood by, and without objection permitted the work to progress to completion, knowing that it was being done, and paid for with moneys borrowed by the county, under the law, for the purpose of being so expended. But, as a rule, there can be no estoppel by conduct, short of a binding contract, where the facts out of which the estoppel is claimed to arise are known to all the parties, as in this and like cases they necessarily were known. *Reid* v. *The State, ex rel.*, 74 Ind. 252. The sufficiency of the plea depends, therefore, on its other averments.

The bringing of this action was a collateral attack upon the proceedings and order of the board, and the case must be determined according to the rules applicable to such attack. If the board obtained jurisdiction over the subject-matter of the procedure and over the persons of the appellants, and in no manner lost or exceeded its jurisdiction, it is clear on general principles, aside from the provision contained in the 12th section of the act under which the proceedings were had, that errors and irregularities, whether manifest in the record or shown only in the complaint, can furnish no ground for an injunction. The authorities to this effect are numerous. References to some of them will be made as we proceed.

We give so much of the act governing the subject as is deemed pertinent to the decision of the questions presented :

"Sec. 1. * The board of commissioners of any county in this State shall have power, as hereinafter provided, to lay out, construct or improve, by straightening, grading, or draining in any direction required to reach the most convenient and sufficient outlet, paving, gravelling, or macadamizing any state or county road, or any part of such road, within the limits of their respective counties.

"Sec. 2. Upon the presentation of a petition stating the kind of improvement prayed for, and the points between which the same is asked, signed by five or more of the landholders whose lands will be assessed for the cost of the improvement, and the filing of a bond, signed by one or more responsible freeholders, * * * the board of commissioners shall appoint three disinterested freeholders of the county as viewers, and a competent surveyor or engineer to proceed upon a day to be named by the commissioners to examine, view, lay out or straighten said road, as in their opinion public convenience and utility require ; and the county auditor shall notify said viewers and surveyor of the time and place of their meeting to make said view, and shall also give notice, by publication in a newspaper printed in said county for three consecutive weeks, next prior to said meeting, which notice shall state the time and place of said meeting, the kind of improvement asked for, the place of beginning, intermediate points (if any), and the place of termination.

"Sec. 4. The viewers, and surveyor or engineer shall make a report to the commissioners at their next regular session, showing the public necessity of the contemplated construction or improvement, the damages claimed, and by whom, and the amount assessed to each claimant, and an estimate of the expenses of said improvement, and the lots and lands which will be benefited thereby, and ought to be assessed for the expenses of the same : *Provided*, That no lands shall be so assessed, which do not lie within two miles of the contemplated improvement : *Provided further*, That lands having once been assessed for the expense of any improvement, made under the provisions of this act, shall not be re-assessed, unless the prior assessment shall not be deemed proportioned to the whole benefit resulting to said land : *Provided*, That where lands are liable to be assessed, under this act, for the construction of two or more roads, the viewers shall take into consideration that fact in assessing benefits.

"Sec. 5. Upon the return of the report mentioned in the last section, the commissioners shall, if in their opinion public utility requires it, enter upon the record an order that the improvement be made, which order shall state the kind of improvement to be made, and the width and extent of the same, and the lands which shall be assessed for the expense of the same; but such order shall not be made until a majority of the resident landholders of the county whose lands are reported as b'enefited'and ought to be assessed, and also the owners of a majority of the whole number of acres of all lands that are reported as benefited and ought to be assessed, shall have subscribed the petition mentioned in the second section of this act. * * * If at any time after making such final order the commissioners shall find that there has been an omission of lots or lands within the territory sought to be assessed, or that there has been manifest injustice in the apportionment of taxes, or that public necessity requires any alteration in the manner of the improvement as ordered, they are authorized to make such addition and re-apportionment as they may deem just and proper, and such change in the improvement as will conform. the same to the public requirement. * * * *

"Sec. 6. The commissioners, when any such improvement shall be ordered, shall immediately appoint three disinterested freeholders of the county, who shall, upon actual view of the premises, apportion the estimated expense of said improvement upon the real property embraced in the order aforesaid, according to the benefit to be derived therefrom, and report the same to the county auditor. * * * When the report of said committee shall be returned, the county auditor shall give notice of it by publication in some newspaper published and of general circulation in said county, and shall also give notice, for at least three consecutive weeks, of the time when the commissioners will meet at the county auditor's office to hear the same. On the day

named in said notice, the commissioners shall meet, and if no exceptions have been filed to said report, they shall confirm the same ; but if exceptions in writing have been filed by any of the owners of the land affected thereby, they shall first proceed to hear such exceptions, and for that purpose shall hear any testimony that shall be offered by any party interested. * * They may either confirm said report, or change the same, or refer the same to a new committee of three disinterested freeholders. * * * The final action of the commissioners shall be entered upon their records, together with the report as confirmed, showing how the said estimated expense has been apportioned upon the land ordered to be assessed as aforesaid. * * * The said assessment * shall be placed upon a special duplicate, * * * and shall constitute and be considered a first lien on the real estate assessed, in the same manner as other taxes are.

"Sec. 12. No person shall be permitted to take advantage of any error committed in any proceeding to lay out, construct or improve any road under and by virtue of this act; nor of any error committed by the county commissioners, or by the county auditor, or by the engineer, or surveyor, or other person or persons in the proceedings to lay out, construct or improve any such road ; nor of any informality, error or defect appearing in the record of such proceeding, unless the party complaining is affected thereby. But the circuit court, in which any action may be brought to enjoin, reverse or declare void the proceedings by which any such road has been laid out, constructed or improved, or ordered to be laid out, constructed or improved, or to enjoin the collection of any tax or assessment levied, or ordered to be levied, for the purpose aforesaid, or of either, may, if there be manifest error in such proceedings affecting the rights of the plaintiff in such action, set the same aside, as to him, without affecting the rights or liabilities of other parties in interest ; and the court shall, in the final hearing, make such

order in the premises as may seem equitable and just, and may order the tax assessment levied against the plaintiff to remain on the duplicate for collection, or to be again levied, in whole or in part, or may perpetually enjoin the same, or any part thereof. The costs of such action, and the proceedings had therein, shall be apportioned among the parties or paid out of the county treasury, in whole or in part, as justice may require and the court direct: *Provided,* That all the lands liable to assessment under the provisions of this act, for the construction of such road, shall be held responsible to the county, to protect the county against all loss or liability arising from any judicial proceeding affecting the assessments for benefits; and also costs and expenses that may arise in any litigation; and re-assessments may be made to discharge the same."

We do not find it necessary in this case to enter upon the probably difficult task of interpreting the provisions of the last section quoted. If its design and effect be to confer on the circuit court, in an action to enjoin or declare void an assessment ordered by the commissioners, the jurisdiction and powers which are commonly and more appropriately exercised on appeal, still it was contemplated that this should be done only in actions brought by a single individual, or by individuals having a single interest, for the purpose of enjoining or declaring void the assessment made against his or their own land, and wherein a judgment could be rendered, "without affecting the rights or liabilities of other parties in interest." We are at least clear that the section does not so far apply to this action, which was instituted by more than forty persons, for themselves "and other persons too numerous to be brought before the court," as to authorize the maintaining of the suit, for any other purpose than obtaining the injunction prayed for, and upon such grounds as would warrant that relief, without reference to the provisions of this section. That is to say: If the proceeding is

shown to be absolutely void, the injunction prayed for will be granted ; but if nothing more than errors and irregularities, not affecting the jurisdiction of the commissioners, is shown, the injunction must be refused, without attempting any correction of such errors.

Coming then to the subject of jurisdiction, it is evident that the jurisdiction of the board of commissioners over the subject-matter of proceedings under this law begins with the presentation of the petition required by the second section. No notice of its presentation or of the hearing thereof is required. The first step toward acquiring jurisdiction over the persons of parties interested is the notice required to be given of the time and place of the meeting of the viewers and surveyor or engineer, etc., the object of this notice, as shown by the third section, being to enable parties to lay before the viewers their claims for damages, if any, on account of the proposed work. The next and only other notice to parties is that required in the sixth section, of the time when the commissioners will meet at the auditor's office to hear exceptions to the report of the apportionment or assessments of the cost of the improvement. As the answer shows affirmatively that the required notices were given, there can be no question of the jurisdiction' in this respect. It is claimed, however, that no such petition was presented as conferred jurisdiction of the subject-matter in the first instance ; and, as much stress is laid upon this point, we give the petition, as in the answer it is alleged to have been, to wit :

"To the Board of Commissioners of Montgomery County, Indiana : We, whose names are hereinafter subscribed, do hereby represent that we are each freeholders, residents of said county and State, whose property will be affected by the improvement hereinafter petitioned for, viz. : To grade, culvert and gravel in a good and substantial manner the following described line of public highway : Beginning at the township line between the townships of Madison and Coal

Stoddard *et al. v.* Johnson, Treasurer, *et al.*

Creek, on the section line dividing sections 7 and 18 of Madison township, thence east on the same line between sections 8 and 17, and 9 and 16, and 10 and 15, and 11 and 14, and 12 and 13, to the township line between Madison and Sugar Creek townships, thence east on the section line between sections 7 and 18 of Sugar Creek township, one hundred and sixty rods, to the eastern terminus of the proposed line of improvement, and then beginning on the above described section line between section 8 and 17, at a point about 9 rods east from the southwest corner of section 8, thence north about 90 rods, extending through the town of Linden, thence west about 6 rods, thence north on the Lafayette road to the county line between the counties of Montgomery and Tippecanoe, to the north terminus of the proposed line of improvement, all of which is situated in Montgomery County, State of Indiana." Signed by eleven names.

It is claimed that this petition was void and insufficient to give the board of commissioners jurisdiction to act in the proceedings, because (1) it describes, and asks the improvement of, more than one road, while only one road can lawfully be included in one petition; (2) it does not contain any prayer, nor state the kind of improvement prayed for; (3) it does not show by township or range the beginning and terminus of either of the two lines of road to be improved. Besides these objections to the document itself, the further points are made that the record does not show "the presentation of the petition," by some one authorized to present it to the board; nor that five or any number of freeholders, whose lands would be affected, had signed the petition; nor that the board passed upon and found the necessary jurisdictional facts.

In support of these objections, counsel for the appellants insist that the law under which the proceedings were had must be construed strictly: that the commissioners' court being one of inferior and limited powers, its jurisidiction

and proceedings must appear and be shown affirmatively by the record ; that other proof than the record is inadmissible, and that presumptions in favor of its proceedings can not be indulged.

It is fairly inferable from the twelfth section of this enactment, that the Legislature intended a liberal interpretation of its provisions, and that errors and defects which did not directly and injuriously affect the rights of the complainant should not be deemed cause for assailing the proceedings. But, aside from the provisions of this section, the rule of law now is, whatever confusion there may have been on the subject, that once the jurisdiction of an inferior tribunal is established over the subject-matter of and the parties to a proceeding which may be had before it, the same presumptions are indulged in favor of the regularity of its action as prevail in favor of the action of the courts of general powers, and its judgments are alike unassailable by collateral attack. *The Evansville, etc., R. R. Co.* v. *The City of Evansville*, 15 Ind. 395 ; *Dequindre* v. *Williams*, 31 Ind. 444 ; *Hord* v. *Elliott*, 33 Ind. 220 ; *English* v. *Smock*, 34 Ind. 115 ; *Ney* v. *Swinney*, 36 Ind. 454 ; *The Pendleton, etc., T. P. Co.* v. *Barnard*, 40 Ind. 146 ; *Worthington* v. *Dunkin*, 41 Ind. 515 ; *Curry* v. *Miller*, 42 Ind. 320 ; *The Board of Comm'rs, etc.,* v. *Markle*, 46 Ind. 96 ; *Evans* v. *The Clermont, etc., G. R. Co.*, 51 Ind. 160 ; *Markle* v. *The Board, etc.*, 55 Ind. 185 ; *The Board, etc.,* v. *Hall*, 70 Ind. 469 ; *Miller* v. *Porter*, 71 Ind. 521 ; *Mullikin* v. *The City of Bloomington*, 72 Ind. 161 ; *Porter* v. *Stout*, 73 Ind. 3 ; *Houk* v. *Barthold*, 73 Ind. 21 ; *Hume* v. *The Little Flat Rock Draining Association*, 72 Ind. 499.

These authorities show further, that when an inferior tribunal is required to ascertain and decide upon facts essential to its jurisdiction, its determination thereon is conclusive as against collateral attack, and that, in such proceedings as that under consideration, the filing or presentation of the petition

calls into exercise the jurisdiction of the board, and authorizes that body to determine, not only whether the petition is properly signed by the requisite land-owners, but every other fact necessary to the granting of the prayer of the petition; for instance, in this case, whether the proposed improvement, its kind, and the points between which it was to be made, and the like, were sufficiently stated   And it is not necessary that the record of the board shall show an express finding upon such facts.   Such finding will be presumed in support of the proceedings, if the record shows an order granting the petition or for the taking of the steps necessary to the accomplishment of the end designed.   In this case the order for the appointment of the viewers and engineer, and fixing the time and place of their meeting, is equivalent to a finding of the facts necessary to have been found, and to an adjudication of the board, that the petition itself is sufficient.   By the presentation of the petition, the judgment of the board upon its sufficiency was invoked, and their judgment in this respect, as much as in other respects, is exempt from collateral attack.

We are not, however, to be understood as meaning by this, that any petition, however defective or irrelevant, will be deemed sufficient to invoke the jurisdiction of the commissioners to decide upon its sufficiency, and to impart validity to that decision as against collateral attack.   The circuit court could not, in an action upon a promissory note, give a valid judgment by default for the recovery of real estate. The petition must, of course, be relevant.

In support of their claim that the petition was defective, that the board did not acquire jurisdiction, and that the record of the board must show affirmatively that it acquired jurisdiction and conducted the proceedings in strict conformity with the requirements of the law, besides numerous cases from other states, counsel have cited the following cases: *State* v. *Conner,* 5 Blackf. 325; *Rhode* v. *Davis,* 2 Ind.

53 ; *Straughan* v. *Inge,* 5 Ind. 157 ; *Rosenthal* v. *The Madison, etc., Plank R. Co.,* 10 Ind. 358 ; *Cobb* v. *State,* 27 Ind. 133 ; *Palmer* v. *Stumph,* 29 Ind. 329 ; *State* v. *Gachenheimer,* 30 Ind. 63 ; *The Ohio, etc., R. R. Co.* v. *Shultz,* 31 Ind. 150 ; *English* v. *Smock,* 34 Ind. 115 ; *The Presbyterian Church, etc.,* v. *City of Fort Wayne,* 36 Ind. 338 ; *Moberry.* v. *City of Jeffersonville,* 38 Ind. 198 ; *The Detroit, etc., R. R. Co.* v. *Bearss,* 39 Ind. 598 ; *Vogel* v. *The Lawrenceburgh, etc., Co.,* 49 Ind. 218 ; *Farmer* v. *Pauley,* 50 Ind. 583 ; *Shute* v. *Decker,* 51 Ind. 241 ; *McDonald* v. *Wilson,* 59 Ind. 54; *Columbus, etc., R. W. Co.* v. *The Board, etc.,* 65 Ind. 427 ; *Deisner* v. *Simpson,* 72 Ind. 435 ; *Doctor* v. *Hartman,* 74 Ind. 221 ; *Boys* v. *Simmons,* 72 Ind. 593.

In most of these cases, the questions were raised on appeal, and involved no collateral attack. In so far as many of these cases hold that the jurisdiction of an inferior court must be shown in its own record, they accord with our present ruling and with the cases cited *supra.* Some of them perhaps contain *dicta* against the indulgence of presumptions in favor of the proceedings of inferior courts, after jurisdiction has been acquired, and to the effect that their proceedings are void unless in strict compliance with the law. If so, they are not in harmony with the cases cited, and in such respects are overruled.

We agree with counsel for the appellant, that the statute does not authorize the including of more than one improvement in a single petition, but if counsel mean, as they seem to, that only one highway, or parts of only one, may be included in a single improvement, we do not assent. If that construction of the law be adopted, then a gravel road, in a single proceeding, can not be constructed through a town or city except along a single street, for every street is a separate highway ; and in the country each enterprise must end with the highway on which it is begun, though connecting

with another highway leading in the direction of the desired improvement. The petition must state the points between which the improvement is asked; and we find in the law nothing which forbids a petition for an improvement, whether it be a single continuous line, or a line with branches, so long as all the parts are connected. It may be urged, as counsel have suggested, that all the roads of a county are connected, and so might all be brought into one scheme; but not unless a majority of the resident landholders should first sign the petition. There is little danger of an abuse of the law in that direction. Neighborhoods will seek such improvements when they need, and think themselves able to pay for, them. And if the neighborhood will be better accommodated by a road in the shape of a cross, circle or other figure of connected parts, than by a continuous straight line, the law does does not forbid it.

The petition is for a gravel road, and that is a sufficient description of the kind of improvement prayed for. No further specification is required until the board comes to order the improvement made. That order must "state the kind of improvement to be made, and the width and extent of the same." But this is not necessarily final, and may be so changed by the board as to conform "to the public requirement." We may suggest, without deciding, that the law contemplates that the viewers shall in the first instance determine the width, depth, and the like specifications in regard to the construction of the work, and make report thereof to the board. By the terms of the law, the viewers are to "examine, lay out, or straighten, as in their opinion public utility and convenience require." The petition was clearly sufficient to invoke the consideration of the board, and to confer upon it jurisdiction to proceed.

It is also alleged in the complaint that the petition was not finally, and before the making of the order for the con-

struction of the work, signed by a majority of the resident land-owners, as required in the fifth section of the law. This, as counsel claim, is a jurisdictional requirement, without compliance with which the board had no power to proceed further. The board, however, did proceed, and if there were not, as there is, an express finding that the necessary number of such land-owners had signed, the question could not be raised in this collateral way.

The report of the viewers and engineer was made to the board at the next regular session in December, 1878, but the schedule of lands reported benefited was not spread on the record, with the report proper. The record was made to recite that the petition was not then signed by a sufficient number, and the matter was continued. No record of any step at the regular session in March, 1879, is shown, but at a special session in April, 1879, the viewers and engineer again presented their report, which, with the schedule, was spread of record, and no one objecting, and it being shown by proof that the requisite number of landholders had signed, the board ordered the work, and appointed a committee of viewers to apportion the cost thereof. It is now insisted that the court lost its jurisdiction by doing nothing, and entering no formal continuance of the matter, at the March term, 1879, and, in support of the position, counsel cite *Inhabitants, etc.,* v. *Commissioners,* 59 Me. 391, cited in *Doctor* v. *Hartman, supra; State* v. *Castle,* 44 Wis. 670; *Gamage* v. *Law,* 2 Johns. 192; *Clark* v. *Holmes,* 1 Doug. Mich. 390; *Brady* v. *Taber,* 29 Mich. 199; *Dunlap* v. *Robinson,* 12 Ohio St. 530; Wells Jurisdiction, sec. 417; Abbott's Law Dict., tit. Discontinuance.

Deciding nothing upon the merits of the proposition in general, we hold that it is not applicable to a proceeding under this law, the 12th section of which is sufficient to prevent a lapse of jurisdiction for such cause.

The complaint charges numerous errors and defects in the

reports of the original viewers, and of the committee of apportionment; as, for instance, that benefited lands had been omitted, and other tracts so defectively described as that the assessments made thereon were void. It is evident, however, that these and the like objections do not affect the jurisdiction, and, if true, constitute errors and irregularities which the law expressly authorizes the board to correct at any time. We do not think a more minute or particular statement of the numerous objections made would be justifiable or useful. They are all within the principles stated. We find no error in the record.

Judgment affirmed, with costs.